Next case is Waiters v. Lee. good morning your honors. may it please the court I'm Megan Bennett and along with Gary Farrell we represent petitioner appellant General Waiters in this case. Mr. Waiters should be entitled to relief habeas relief on three grounds here. I'm going to start with the aggregate claim. Just a little louder because the masks muffle, but thank you. How's that? Thank you. Okay Mr. Waiters is entitled to habeas relief on three grounds. I'd like to start with the claim that the aggregate the errors in aggregate entitle him to relief and then address those individual claims in the context of the aggregate argument. And as a threshold matter we ask that this court review our claim that the collective errors constitute ineffective assistance of counsel de novo because while the district while the state court was presented with the claim of cumulative error it did not render a it spoke specifically to each of the errors the failure to introduce the total the complete medical records through a medical expert the failure to impeach Ms. Warren's on her testimony about the alcohol consumption the morning of the shooting and the lesser included the erroneous lesser included offense but did not ever address on the merits the issue of the cumulative error even though that was squarely presented to the state court by both the by both defense counsel and the prosecution but even if this court were to review it review that under argument under Edpas deference we still think Mr. Waiters is entitled to relief here and here are the reasons why. As the court knows and certainly Judge Livingston is familiar having written the prior opinion here there was a substantial body of medical documentation that detailed the extreme intoxication that Mr. Waiters was suffering on the morning of this of the shooting. Within two hours of the shooting he is diagnosed or he's tested it at with the blood alcohol level of 0.39 which is four times the legal limit for operating a vehicle in New York State. His trial counsel attempts to the state court says you need to have an expert to do so trial counsel says okay I'll just put in the two two lines essentially saying intoxicated and unable to assess central nervous system due to intoxication but omitting from the jury's province any any discussion or any meaningful understanding of exactly how intoxicated he was. Dovetailing with that and I understand that this court has already said that even assuming that that was deficient Mr. Waiters was not prejudiced by that error because there was other testimony during trial that established his intent. The other evidence would have been undermined had trial counsel cross-examined it for example Jacqueline Warren on her statements at on her testimony at trial that Mr. Waiters had consumed very little alcohol that morning. Other witnesses saying that they had not seen him consume any alcohol that morning. Your complaint is not he didn't cross-examine it. Your complaint is that he did not attack her credibility isn't it? That he didn't attack her credibility with respect to her description of what general Waiters what alcohol general Waiters. You're attacking credibility you're attacking the witness's credibility period aren't you? Yes and I think and because they had the prior inconsistent statement on that one area it also would have attacked her credibility and you understandably this is a witness who you know her family was as Judge Jacobs said in his dissent previously her family was decimated in the shooting. It is it is reasonable for her to come to trial with a view of the evidence that that may not have corresponded with how she recalled the evidence at the time one month after the trial when she was went back to the shooting. And how would that have helped you? I want to know the if I understand the record correctly at trial she did acknowledge that he was drinking heavily enough that she took the bottle from him. Well now just bear with me and I want to hear your answer. I understand that her prior statement was that he had drunk what was it a pint and she didn't acknowledge that at trial. So if you had been able to elicit the prior statement what was the impeachment argument going to be? Let me let me make sure I understand what you were deprived of. So what the impeachment so she testifies did Mr. Waiters have more than one drink? Yes. You'd see Mr. Waiters drinking before this is at A58 of the appendix. But she acknowledges that he was drinking heavily enough that she took the bottle away. She says that they had an argument over him drinking too much. She didn't say that they had an argument over him drinking too much that day. She says Mr. She says Mr. Walters had drunk too much. Did I misunderstand that she testified she took the bottle away from him that day? She testified she took the bottle away from him. But the key question so Judge Raji are you asking was this actually impeachment material? I know I'm wanting when you got to do what you say you were deprived of the ability to do what would the argument have then been? The argument would have been that Miss Warren intentionally minimized the alcohol consumption. So what now now I don't say that sarcastically. So so what then would the inference the jury would be have been urged to make be? And therefore her other testimony such as the intentionality of all of his acts which dovetailed with the testimony from Lorenzo Warren which formed the basis in the in the first decision that there was no prejudice here would have been undermined. So is this a false in part false in whole argument that you're saying? No no not certainly not. I think it just goes to the credit to the general credibility not not that he not that she was lying but that you that there were questions about the reliability of her testimony as to Mr. Waiters himself and that also dovetails precisely with the manslaughter request because at Calvin Simons at trial was clearly pursuing a theory that would have that went to whether or not Mr. Waiters could form the requisite intent. That's why he got the intoxication defense. That's why he wanted to put in the medical records. He then asked for a lesser included charge for manslaughter in the first degree which just like the main charge murder in the second degree is a specific intense intent offense. It makes no sense to ask for manslaughter in the first degree. He should have asked for manslaughter in the second degree which under New York state law is a lesser included to murder in the first degree. Do you have any case in which a failure to ask for an alternative lesser charge has been found to be an effective assistance? So here's what I would say. This is why it's important that we're making this argument in the cumulative. I don't have a Supreme Court case that says specifically says that failure to request the correct lesser included charge constitutes on its own ineffective assistance of counsel. But here where you have the cumulative error. Do you have any case that says that where all of the alleged Strickland violations have found non-prejudicial individually that collectively there could be a Strickland violation that is prejudicial? Judge Vidaliano, let me put it this way. If that were not the rule, then there would be no reason to have a cumulative error theory because you would always be entitled to relief on the individual theory. It must be that individual errors have to, that are less than Strickland deficiency or Strickland prejudice when considered together amount to more than their errors individually. Do you have a case that says that? I don't have a case. We have cases in the Second Circuit that talk about cumulative error and just as a matter of logic. But you understand the EDCA standard. I mean, it is extremely deferential. It operates at two levels. We first have the Strickland deference, but then we also have to say that it's clearly established such that we wouldn't defer to the state court here. I do understand. So I'm not saying this is not an argument that we wouldn't entertain if you were on direct appeal of a criminal conviction, for instance, but how do you satisfy the EDCA burden here? So under EDCA, what we have to say is that the state court unreasonably applied Strickland here, essentially. Clearly established law as promulgated by the Supreme Court. Right, that it unreasonably applied Strickland in this case. And I understand that under Strickland, and this is a double deference, under Strickland there's a presumption that trial counsel had reasons for his or her strategic choices. In this case, so going to the first level of deference, the Strickland level. And has there ever been a case that either singly or as part of a cumulative analysis has found that a failure to request a lesser included offense charge demonstrates ineffective assistance? I have not. At least the first prong of Strickland, that it falls below an objectively reasonable standard. Any cases? I didn't see anything. I didn't see any cases, but that doesn't mean that it can't. There's certainly no case that says that a failure to request the proper lesser included is never ineffective, is never deficient, never falls below. But that's not the EDCA standard. No, no, but I'm saying that I, like you, Judge Raji, I've not seen that case, but I just want to make clear that the fact that that case, that that fact pattern doesn't exist in the published case law now shouldn't necessarily mean that it could not be in this case. That when trial counsel is pursuing an intoxication theory, tries to put in the medical records, fails to put in the, I would say, the most meaningful aspect of the medical records, allows the jury to hear from witnesses who speak to conduct that looks intentional, and then asks for a lesser included. This was not an all or nothing defense. That's what Calvin Simons says at the 440 hearing. He says he doesn't believe this was an all or nothing, and it couldn't be all or nothing because he asked for a lesser included. All or nothing would have been murder or acquittal. If he was asking for a lesser included... What was the lesser included that you say he should have asked for that he did not? Braved indifference, murder? No. He should have asked for manslaughter in the second degree under Section 12525 of New York Penal Law, which the New York State Court of Appeals has expressly held is a lesser included of murder in the second degree, not depraved indifference murder, but intentional murder. And I recognize that there is a little bit of... that there could be questions about how a recklessness manslaughter charge could be a lesser included of an intentional murder statute. But the fact is that in New York State, it is. And that's the lesser included that he should have asked for. And if you look at the appendix, if you look at the section of Mr. Simons' testimony on this point itself, he seems, frankly, confused that this could have been the lesser included that he asked for. He says at page... At page 231 of the appendix, when asked, do you have any strategic reason for not requesting manslaughter in the second degree as a lesser included? At the time, I guess, I requested the charges. Whatever I was thinking at the time, I based it on what was going on at the time. So I can't say I thought about it, et cetera. Then he is asked, you would agree that manslaughter in the second degree can be given as a lesser included of murder in the second degree. And then the answer is, manslaughter is a lesser included from? Question, murder too intentional. That's my question to you. Do you agree with it? Answer. I don't know. Maybe certain cases. I don't know.  I think you said that it's not necessary for us to find that there was a mistake by the attorney with regard to all three of the things we want to add together. Because it wouldn't make any sense to have a cumulative error doctrine if that was required. But I would have thought that what the cumulative error doctrine is doing is saying a lawyer made a mistake, but there is no prejudice. It doesn't rise to that level. He made another mistake. The prejudice associated with that mistake doesn't rise to that level. But you aggregate the prejudice, and in that circumstance, it rises to a constitutional violation. But don't you have to find that there are errors to get to that prejudice analysis? I would agree, Judge Livingston. When we say that there are errors, does that mean that there are errors that constitute deficient performance? I'm not sure. It's an interesting point. I'm not sure if the cumulative analysis is only with respect to prejudice. I hear what you're suggesting, and there is some appeal to that argument. But I'm not sure. Because I think you could have errors that individually might fall below the level of deficiency. This Court previously found that... Well, actually, this Court didn't address the prejudice of... Sorry, the deficiency of Simons's failure to introduce the full medical records. So let's say, assuming that that was failure, previously the Court said, well, that wasn't prejudicial because of all this other testimony that showed that his acts were intentional. Well, what if you had been able to say that the witnesses who testified to that intentionality actually had said something differently before and therefore undermined the credibility of Ms. Warren, for example? And what if, in addition, you said, well, the jury, had they been instructed on manslaughter in the second degree, because obviously Simons was going for a give them something lower that they can convict on, because the evidence obviously was overwhelming. There was no question that he was the shooter. This wasn't an identity defense. This wasn't an alibi case. It all had to do with what his intent was. And he asked for a lesser-included charge that had the same intent requirement. If the jury finds intent, they will convict him of murder. There's no reason. Not only does he not have one, but there's no reason evident anywhere on the record here to justify that request. He made a choice to ask for the lesser-included. That choice may have been the strategic one. It is not reviewable as an ineffective assistance of counsel analysis. But having made the choice to ask for a lesser-included, to give the jury an option to convict on a less-than-murder count, he had to have asked for the correct one. And he simply didn't understand that that's what it was. So, I see I've gone over my time. Thank you. We'll hear from your adversary. May it please the Court, Rhea Grove for the respondent. As to the aggregate ineffective assistance claim, there has to be error for there to be cumulative error. And as the District Court found, there was no error on either the impeachment claim or on the lesser-included count claim. Here regarding the lesser-included count, defense counsel at the 440 hearing stated that he did not recall his strategy at the time the hearing was held six years after trial. He stated he had a strategy at the time of trial, but he stated he no longer recalled what that strategy was. He testified that he didn't look at the charge conference, he didn't read the trial transcript prior to testifying at that hearing. And that included even the impeachment claim. He did not recall, he didn't read the trial transcript, he wasn't prepared by the defense attorney who called him at that hearing, and he didn't read any of the prior, any information or read any of the transcripts or anything prior to testifying at the hearing. And it was six years after the trial. Asking for the, but he did say he had an intoxication, and the record, the trial record itself bears out that he requested an intoxication defense, and his, not only the summation, but even his motions to, at the close of the evidence, both the prosecution's case and the defense case, indicate that he was seeking an all-or-nothing defense. Now the fact that he also requested manslaughter in the first degree, as a lesser-included offense, does not change that he was seeking an all-or-nothing defense as to the intoxication. He specifically did not ask for reckless lesser-included counts, because he told the jury during summation, the defendant here is not charged with lesser-included counts. It's either intent, and if you find by way of intoxication that he was too intoxicated, then you have to acquit. Now, he knew, defendant was supposed to testify up until, the last minute when he chose not to. He knew, defendant had, there was testimony at trial from Ms. Warren that the defendant had told her he was intended to aim at Lorenzo, and during his opening statements, defense counsel said there was no intent to kill anyone. That was part of his opening statement. So by asking for the man won, he was, as a lesser-included, perhaps he was hoping that instead of, if he didn't prevail on the intoxication defense, he at least had a backup plan. It may have been a nuanced backup plan, and perhaps he didn't remember it at the time he testified at the 440 hearing, but there was this backup plan, at least, that perhaps instead of convicting of murder, with the intent that he had the intent to kill, perhaps they would have thought instead that he only intended to cause serious physical injury when he fired the shot at Lorenzo. Whom he was goading at the time. In terms of the impeachment evidence, Jacqueline Warren testified that morning that defendant had too much to drink. She didn't remember, or she couldn't testify to how many drinks he had, but she testified that he had too much to drink, so much so that she had to take away the bottle of alcohol. That was not particularly inconsistent with what was in the investigator's report. The defense attorney testified at the hearing that the questions he asked, he didn't recall again his strategy six years later, but that he knew he had a reason for asking the questions that he did. Nothing in that statement was so contradictory to Jacqueline Warren's testimony, where she certainly helped his intoxication defense by saying that he had drank too much that she needed to take the bottle away, and Lorenzo Warren testified that the defendant was intoxicated that his speech was slurred, which certainly went through. Wouldn't it have been helpful to, I mean it would have been helpful, right, to impeach her credibility, I mean to draw into question her credibility, she's minimizing his drinking, to have the jury also think, well maybe she's not telling the truth with regard to the telephone conversation she claims to have had with waiters later. That was a very important telephone conversation, wasn't it? Well I think it was an important conversation, and the defense attorney did a very good job of impeaching her regarding that telephone conversation. I don't know that the investigator's report would have done that much. All it would have done, had he introduced it, it would have indicated, he could have introduced it for the purpose of the fact that she made a prior statement, but then again, not for the truth of the matter of what the statement said under New York law. And the jury would have gotten instruction saying it doesn't go towards the truth of what's in the statement, just the fact that she said it. So I don't know how much that really would have helped in terms of, you know, impeaching her with that. And she really didn't minimize waiters' drinking that morning. She said she didn't know how much he drank, but that he drank too much, or that she had to take the bottle away. That's not minimizing how much he drank that morning. And said that as a result of taking the bottle away, that's when the argument ensued, which led to the shooting. So I don't think that that in any way minimized his drinking, and I don't think that failing to impeach Warren with that investigator's report in any way, you know, constituted ineffective assistance. Well, under New York evidentiary rules, would that statement even qualify as a prior inconsistent statement? Not as a prior inconsistent statement, more as just a prior maybe consistent statement, or a prior statement just in terms of what happened. Would a prior consistent statement be admissible? Wouldn't that just be hearsay? It would be hearsay, which is why it would not be admitted for the truth of the matter asserted, and it would have ended up with a... Well, why would it come in for any purpose? I'm not sure that it would have, Your Honor, and it really, there probably would have been an objection, but had it come in just for the fact of the matter that she had said it to an investigator, then it would have come in with the proviso that it was not for the truth of the matter asserted, which means, you know... But aren't defendants allowed all the time to bring out the fact that a statement is not exactly the same as an earlier statement? The government might argue that it's not sufficiently inconsistent, but, I mean, I didn't understand your argument to be that this statement wasn't admissible at all and that that's why counsel wasn't ineffective. Or did I misunderstand you? Are you saying that it would have been pointless for counsel to object because the statement was inadmissible? I'm not saying that it necessarily would not have come in. It perhaps could have come in, but I don't think that it would have helped him in this particular incident. I understand that part of your argument. It was not inconsistent with her testimony that Waiters was drinking, you know, that Waiters was drinking, and actually heavily that morning, to the point that she had to take away the bottle from him, because she told him that he was drinking too much. No, I understand. So, and again, when it comes to the cumulative issue, there was no ineffective assistance as the district court found, and if there was no error, you can't just pile on non-error upon non-error to find error. So I see my time is, well, it's almost up, but if the court has no further questions at this point, I will rely on my brief. Thank you. Just a couple quick points addressing the question of impeachment here. Ms. Warren was asked at trial, did you observe how much Mr. Waiters had to drink? And she answered, no. That's on page 58 of the appendix. A month after the shooting, she says to the investigator, the morning of the shooting, at about 8.30 a.m., General got up and started sipping liquor again. He had about a pint by himself. So I think that is clearly an inconsistent statement. At the trial, she says she didn't see. Two years, several years earlier, she says she did see. With respect to the... I want to just return briefly to the lesser-included issue. If you look at Mr. Simon's opening statement, he focuses on how there was going to be no proof that there was going to be no proof that General Waiters intended to kill the young child, which I think contributes here to the general aura of his lack of confidence when it comes to what the nature of the charges under the New York penal law required. There was no need to show that General Waiters intended to kill a 3-year-old. This was obviously a transferred intent theory. Calvin Simons goes into the trial arguing no intent to kill the child, which has nothing to do with culpability down the road, recognizes that there is a reason to put in the medical records on intoxication, recognizes that there is a reason to ask for and get the intoxication instruction, recognizes and gets a lesser-included instruction, but gets the one that if a jury is going to find intent, they will simply just convict on the higher charge. Your adversary says no, because first-degree manslaughter can be an intent to harm without an intent to kill. So what's your response to that? That that was a strategic decision. He wanted to give the jury the possibility of an intent to harm without it going so far as to be an intent to kill. I would say then it would have made no sense for him to have asked for the intoxication instruction, because the intoxication instruction goes only to intent. And at his hearing, the 440 hearing, he can't... Wasn't this the so-called backup plan in case the intoxication defense failed? Then he should have asked for the instruction that dovetailed with the intoxication defense. If he was simply going for, um, for an all-out acquittal, he didn't need the manslaughter in the first degree. If he was going for a lesser-included conviction, he should have asked for the manslaughter in the second degree. He could not articulate... But he asked for a lesser-included that didn't include charging the jury on recklessness. He asked for... He asked for the lesser... I guess the question, though, is... Manslaughter, too, would have put recklessness before the jury, wouldn't it? It would have certainly put recklessness in front of the jury, and it would have been the charge... And it's the only way recklessness would go before the jury. And it's the only charge that makes any sense with the intoxication request here. May I ask you something? Because it seems to me your argument almost gets into the sufficiency of the evidence. If we do not accept your other arguments of counsel ineffectiveness, don't we have to confront the situation here that a jury charged on these first-degree... Or on murder, second-degree murder, found him guilty. And so how can it be... How can your client have been prejudiced by failing to give a lesser-included charge when they found him guilty of the first-degree charge, unless you're challenging sufficiency, which I don't understand you to be doing? But that goes to the question of the medical records. If the medical records had come in with an expert opinion as to what the impact of a blood alcohol level of .39 was on the person, the jury would have had different evidence. But we've already found that... That that was not a prejudicial error. That alone was not prejudicial. I'm sorry. I'm sorry. That that alone was not prejudicial. But here, the question... To your question about the sufficiency, because the jury was deprived of that additional information from a medical expert, they were left with the impression that he was just drunk. Not... They did not understand that at that level of intoxication... It seems to me that you're asking us to basically reassess a decision already made by this court. No, I'm saying in the context. That's why the cumulative error argument is important here. It's in the context of failing to ask for the proper lesser-included instruction, not going after Ms. Warren on her testimony that she didn't see how much he drank that day, and also not putting in the proper medical records. So I understand that we're done on the medical records as an individual basis, but it dovetails precisely with the intoxication instruction that he got. And while this court can look to the... When the trial counsel doesn't remember a strategic reason, this court can look to the record to find one, and that's what it says in Grenier v. Wells, a case that once again involved the same trial counsel, Calvin Simons, who likewise could not remember the reasons for his failure to impeach. In that case, there were risks of opening the door with that testimony, and this court found that there was a strategic reason not to do so. There is no strategic reason on the record for Mr. Simons, who was pursuing a lesser-included theory. He was giving the jury something to convict on that was less serious, why he wouldn't have asked for the recklessness instruction. Thank you. Thank you both. Nicely done. And I recall that counsel in this case was appointed in, what, 2000 and... How many years has it been? Mr. Farrell has been working on this case since 2013, since Judge Gleason appointed him. I came a little later. So, thank you both. Thank you. Well done.